We'll hear argument in our second case, Case 24-1899, Powell v. SEC. We'll let counsel have a few minutes to come up and get settled. Case 24-1899, Powell v. SEC. Okay, this is the time set for argument in Case 24-1899, Powell v. SEC. Ms. Little, good morning. Good morning, Your Honor. May it please the Court, I'm Margaret Little. With me today is Carol Rollins of the new Civil Liberties Alliance. Representing petitioners, we would like to reserve three minutes for rebuttal. Over 50 years ago, the Security and Exchange Commission slipped a tiny paragraph into the Federal Register that for the first time in our history, imposed a gag on future speech as a condition of settling with the government. The gag was effective immediately. It has never been judicially reviewed. Congress itself could not pass a statute that prohibits a defendant from speaking critically about a civil or criminal case brought by the government that was later settled. The Supreme Court made that clear in Simon & Schuster when it held that even a law prohibiting a criminal defendant from receiving payment for his speech was unconstitutional. So one feature of this is that the petitioners, the defendants in these matters would have agreed to these terms and conditions. So does that agreement change the analysis? Not at all, because it's not an agreement. It is a required condition of settlement, and the SEC has never denied that. It is mandatory. Well, that's true, but in terms of whether they had to settle in the first place, that would seem to be something they would have agreed to. They agreed to settle for certain, but they did not voluntarily agree to give up their right of future speech. Well, I guess that's the question, right? They were presented with a choice of whether to settle. These were the terms, and they elected to do so. Does that change the analysis from a First Amendment standpoint? Well, there's both a due process and First Amendment aspect to this. First of all, a gag is not something that the SEC could ever achieve if it won the case. It is not amongst the remedies that is allowed by Congress under either the Securities Act or the Exchange Act. So the SEC is asking for something it could never win at trial, and the first thing that the SEC cites in its memorandum is the ITT continental baking case in which it says settlements are agreements that are negotiated between parties in which they give up something they might win at trial in exchange for a settlement. What SEC has done with a gag is put into documents it drafts and requires the settling party defendant or respondent to sign that is not something they could win at trial. Furthermore, those documents which are drafted by the SEC strip them of all due process protections. They have to waive a hearing, the right to be heard, and to have notice and opportunity to be heard on whether they want to give up their first. Well, I mean, there are these cases that talk about waiver of rights, right, in the remory framework. So is that the appropriate framework to be looking at here? Well, no, because this is an unconstitutional condition, and the unconstitutional condition cases of the U.S. Supreme Court are very clear that you may not attach an unconstitutional condition including and especially giving up First Amendment rights as a condition of either receiving a benefit or doing business with a government or maintaining your job, and there's a host of unconstitutional conditions cases that apply to this. None of them require a balancing test or any kind of close nexus. It's just flatly. I mean, couldn't this argument have been made in remory too that that was an unconstitutional condition to tell someone that they couldn't bring a Section 1983 claim in return for their criminal case being dismissed? Well, Judge Brass, this circuit took great care in dispatching that view of remory in its Davies decision. And in Davies, the Ninth Circuit took a look at remory, and what it said was this was the surrender of a statutory right to bring a 1983 claim, which stands in a different posture than a constitutional right. Furthermore, that 1983 was part of the dispute being settled. It did not involve any future rights at all. It involved something that had occurred in the past that was being settled as part of the bundle of claims that would be resolved at that point. So no constitutional right was given up in remory as this court recognized, and in Davies what this court held, and it's an excellent precedent for us, is that you cannot be required to give up a constitutional right in the future or your exercise of that right in the future, as was asked in Davies where the person was told they could not run for the school board in the future. And this court held that to be unconstitutional. Let's assume that the rule didn't exist, but the SEC as a matter of policy insisted on this provision in every settlement. Would your position be the same? Well, we're not here. I know you're here on a petition, not as a representative of a party. We're not here in that posture, but yes, it would be the same. And why? Because no agency can ask a citizen to give up its future exercise of a constitutional right as a condition of doing business with the government, and that is the unconstitutional conditions doctrine, which is set forth in numerous cases, Perry v. Sinderman. I have a whole list of them. You're probably very familiar with them, but there's at least a dozen cases at the U.S. Supreme Court that says that the government may not ask someone doing business with it or settling with it to surrender a constitutional right. In addition, this court's decision in Richards is very interesting because in Richards what had happened was a criminal defendant had given up his right of appeal, but then the government put as a condition of his probation that he not criticize a county commissioner in the future. And the way this court addressed that situation, and mind you, there was no rule in effect. This was not an administrative procedure case, but they restored to him his right of appeal that he had waived so that he could bring an unconstitutional condition to this court, and they said the fact that the county required him to give up his right of future speech to criticize the county commissioner was unconstitutional. So the Richards case is interesting both because a waived right is restored because an unconstitutional act happened by the government, and it restored to him his right to appeal and to prevail on that appeal in terms of the conditions the government may impose upon resolution of the case. Thank you. Counsel, I'd like to bring you back to the Rumery case. You mentioned earlier that the difference as discussed in Davies was that it was a statutory right that they were giving up, not a constitutional one. Did I understand that correctly? Correct. That's what the Ninth Circuit said too. Okay. And while I understand that technically 42 U.S. Code Section 1983 is statutory, it does seek to enforce a constitutional right, correct? Yes.  So then in addition, though, isn't the right to file a lawsuit a form of communication embraced by the First Amendment? It could be, but I think what actually happened in Rumery was that there were claims and there were counterclaims all occurring in the past, and that was important to the Ninth Circuit in the Davies opinion. And so they did the balancing test there and concluded that there was enough of a close nexus and a desire for the parties to resolve all of their claims in a bundle for that to pass constitutional muster. There is nothing like that here. What is the relevance of the fact that if there's a claim breach of this provision in the consent agreement that the SEC's remedy is to go to court and a judge would have to then agree that the matter should be reopened? Doesn't that provide some degree of protection? No, because under the D.C. Circuit's opinion in Cato versus the S.D.C. in which the gag was challenged, the D.C. Circuit held that if someone spoke out contrary to the gag provision, they would be in contempt of court, both civil and criminal. And in that case, the SEC said, no, well, this is not self-executing, all they have to do is apply to the court to reopen the case, and the D.C. Circuit said, no, this is a criminal or civil contempt. And the reason that's important is that there's something known as collateral bar rule where if you go out and speak in contravention of a court order, you are guilty of civil or criminal contempt. And in the case of Walker versus Birmingham, this is a civil rights case having to do with Martin Luther King seeking a permit to march. He was not given that by the city of Birmingham, so he marched anyway. He did that expecting to win on a First Amendment grounds. He lost at the Supreme Court because the Supreme Court said, you can't go out and disobey a court order. You have to challenge that order in the court that entered it. And so our clients cannot go out and speak without risking civil or criminal contempt under that line of authority. Right, but at the end of the day, a court would still have to find that to be in contempt of an order, right? Well, I guess two things. We don't know what a court would find, and so you have thousands of people who are operating in uncertainty about what they can and can't say. So this rule chills their speech, and that obviously gives them standing to bring it. But I've worked with clients under these gag rules. They're very, very concerned about what might happen to them if they would speak. And some of the amicus briefs bring forth examples of where the SEC has threatened reopening cases, and people have had to issue retractions criticizing the government. And all of that is contrary to what the First Amendment is supposed to protect, which is your right to criticize the government. But if someone is facing that uncertainty, is there a forum they can go to, i.e. a court, and explain this to a court and to have that issue resolved on a case-by-case basis? Only on risk of civil and criminal contempt under the authorities I've cited to the court. Let me ask you a question. There's argument made that these agreements aren't voluntary. Does your position hinge on that? Because I think the SEC would say, well, they are voluntary. Your clients entered them. They simply are not. All of these documents are drafted by the SEC, and they're drafted in a pernicious way. If you are in an administrative proceeding and a respondent, as two of our clients are, Mr. Powell and Mr. Lucia, they are given a document that is called offer of settlement on their part, drafted by the SEC. They cannot alter that document. The SEC will not settle with them if they alter any provision of that document that is deceptively named their offer of settlement. In settlements, sometimes one side says this is non-negotiable, and that's often the case in a deal. Which is fine. There probably are provisions in those documents that are fined to be non-negotiable. The gag is not one of them. Are there any circumstances, in your view, in which the government could require somebody to have limitations on what they would say later? Only one, and that's national security. And that is addressed in Professor Rodney Smola's argument, which we cite in the brief. And national security is an exception to that, but it is the only exception I'm aware of in law. What is it that your clients want to say? Because the SEC seems to say in their answering brief, you could be critical of the agency, you could say bad things about us. What they don't want your clients to do is to deny the allegations if that's the case they want to have the chance to litigate against you. Well, first of all, that assumes a certain infallibility on the part of the government. It's just not realistic to believe that the SEC will have drafted a complaint or an administrative charge against people where every single allegation is true. In fact, the SEC knows well that they would be hard-pressed to win on those allegations of trial in many cases. And so the fact that the SEC, by making this a required condition of settlement, they not only get to settle, they get to control the future narrative of its dealings with this person. And that is forbidden, it's a prior restraint, it violates the First Amendment, it dictates the content and the viewpoint. I mean, if you settle with the SEC, it's fine if you praise them or say what a good job they did in prosecuting me, but you may not criticize a single allegation of your complaint. And that is simply violative of the First Amendment. And furthermore, and it's a way this court could resolve this case without reaching the constitutional questions, although I think it should, a gag is not a remedy that is provided for under the securities laws. There is nothing in the 78Y or W that allows the SEC to gag anyone. Counsel, I guess I'm stuck more on the fact that it's voluntary. You know, your clients agreed to enter into. If they felt so strongly that the SEC was wrong, they could just not enter into a settlement with them. How does that not matter? Well, first of all, three of our clients tried to negotiate the gag out of their settlement agreement, Mr. Powell, Mr. Lucia, and Ms. Torian. And they were told Rule 202.5, which is the rule under consideration here, required the agency to gag them. That's certainly not voluntary. If you're saying, well, they could just, you know, proceed to trial all the way? Yes. Yeah, we cited an article by Nelson Ovis. It took him 12 years and $12 million to prevail at trial where the jury threw out every aspect of the case against him. He was offered the chance to settle many, many times. Fortunately for him, he had the resources to secure that verdict. But here's what would have happened. If he, like most people, did not have $12 million to defend himself, he would have been forced to sign an agreement in which he agreed not to deny any allegation in a complaint that a jury later found had no basis. What about our decision in Leonard? Leonard is such an odd thing for the SEC to argue. It just does not support them in so many ways that it's kind of fun to argue this. So let me get to my notes on that. Leonard, first of all, assumed without holding that there were First Amendment rights at stake. And they made the express statement that they were not even deciding whether there was a First Amendment right at stake. Second of all, it involved a union position that was proposed by the union in entering into the contract with the city that they later claimed violated their rights. And mind you, the Ninth Circuit did not agree that that involved a constitutional claim. And this is super important for Leonard. That provision was not something demanded by the government. It was proposed by the union. So if anything, Leonard v. Clark is a case in our favor. And I know the SEC decides it throughout their brief, but it just doesn't carry any water for them. You want to save some time for rebuttal? Yes, I do. Thank you. Thank you.  May it please the Court. Archith Ramkumar of the Securities and Exchange Commission. For over 50 years, the commission has required defendants who choose to settle with the commission to agree not to publicly deny the commission's allegations against them. Most settling defendants also do not have to admit the commission's allegations. Petitioners ask this court to hold that the commission's discretionary decision to leave this longstanding policy intact violated the Administrative Procedure Act. But they have failed to show that the commission committed legal error. Petitioners' sweeping arguments that waivers of First Amendment rights are categorically unenforceable are foreclosed by precedent. And under the balancing test elucidated in the Supreme Court's decision in Town of Newton v. Rimmery, the no-deny provisions would be constitutional if the commission sought to enforce them against the individual petitioners who have entered into consent agreements because there is a close nexus between the narrowly tailored no-deny provisions and the limited and carefully constructed remedy afforded to the commission in the event a defendant who settles with the commission subsequently publicly denies the commission's allegations. That remedy does nothing more than place the parties in their respective pre-settlement positions because it allows the commission to pursue what it gives up when it settles, namely the chance to prove its case at trial. Accordingly, the petition for review should be denied. What are the key precedents that you think bear most directly on this? So to start with, Judge Bress, Town of Newton v. Rimmery, as you alluded to moments ago, as well as Leonard v. Clark, and then the Second Circuit's decision in Romerill is also instructive. Obviously, it's not binding precedent. But in Romerill, the Second Circuit unequivocally held that one of the petitioners in this appeal who entered into a consent agreement containing a no-deny provision did so voluntarily and his First Amendment rights were not violated. Okay, so Rimmery, Leonard, Romerill. And I would actually also add Davies v. Grosmont Union High School District to that list. And the reason for that is Davies applied the methodology that we are advocating for in this appeal, which is simple Rimmery balancing. I know the outcome there was different than the outcome we're advocating for in this case, but that is because there are crucial factual differences between this case and Davies, and I'm happy to delve into those differences if it would be helpful to the Court. Go ahead. So in Davies, there was no legitimate governmental interest justifying the prohibition at issue aside from a generic interest in finality. Indeed, the underlying dispute concerned Dr. Davies' wife, not Dr. Davies, yet it was Dr. Davies' right to run for public office that was being restricted in that case. There was also no effort to narrowly tailor the prohibition at issue in Davies. And then finally, when Dr. Davies violated the terms of the consent agreement, the district sought to hold him in contempt. That is not something the Commission can do under the explicit unequivocal terms of the consent agreements. What is the relevance of the D.C. Circuit Cato case here, which opposing counsel discussed? Sure. So in that case, the D.C. Circuit did not have a consent agreement in front of it, which is why the D.C. Circuit concluded that the Cato Institute did not have standing. The terms of the consent agreements are clear. The most the Commission can do in the event a defendant breaches the terms of a consent agreement is ask a court or an administrative tribunal to restore the case back to the active docket. And then if and only if that request is granted, the Commission has the opportunity to prove its case at trial consistent with applicable rules of procedure and evidence. I am not aware of a single instance of a court holding someone in contempt for violating a no-deny provision in the 50-plus years that the policy has been in effect. So what can somebody say who is subject to one of these? Because your brief had a few comments saying, well, you can still essentially criticize the SEC. You can't deny the allegations, but so what can somebody actually do who is subject to this, in your view? So in our view, someone could criticize the Commission and its enforcement program so long as they refrain from denying the specific allegations against them. But again, that's why I think the limited remedy afforded to the Commission is so important here. The Commission lacks the ability to unilaterally determine that someone has violated the terms of a consent agreement. A court or an administrative tribunal would have to agree with the Commission. And so if there were borderline or indirect cases, then a court would be an important check on the Commission's ability to restore the case back to the active docket. And indeed, that brings up an important point from Rumerie. In Rumerie, Justice O'Connor concurred, and she noted that judicial oversight is an important check on abuses that can occur during the settlement process. Here, judicial oversight is a built-in component of the limited remedy afforded to the Commission. So, I mean, if somebody says, you know, the SEC is a terrible agency that goes after people and brings trumped-up charges that have no basis in fact, even though that person was subject to a consent agreement, your position would be that that kind of speech is okay? I think that would be certainly a close question, Judge Bras. But again, the Commission would have to examine the facts and circumstances of that statement. It would need to decide whether to dedicate resources to reviving the case, and then if it elected to dedicate resources to reviving the case, it would have to ask the court to reopen the case and restore the case back to the active docket based on its view that the terms of the consent agreement have been violated. I think what the petitioners are concerned about is that there's uncertainty about what they can say, and they don't want to have to go to a court every time they want to make a comment that's critical of the SEC and worry that they're going to be brought back in. Sure. So one additional thing I would say is that the age of the relevant settlement agreements matter, and the reason for that is as a practical matter, witnesses' memories tend to fade over time, and so the older a settlement is, the less likely it is the Commission will avail itself of its contractual remedy, and the less likely it is that a court would be amenable to granting the Commission's request to restore the case back to the active docket. How often does the SEC go to court and try to reopen on this basis? I don't have an exact figure I can give you, but I would respectfully submit that that empirical question is irrelevant to the issue presented in this appeal, which is whether the policy— Right, but I think we just want to know how often this occurs. Do you have any idea? I don't have an exact figure I can give you. Has it ever occurred? I do not know of an instance in which it has occurred, but importantly, in Leonard v. Clark, this court observed that the city had never invoked Article V, the collective bargaining provision at issue in that case, yet after employing rumor rebalancing, this court upheld the provision as being fully consistent with the First Amendment. No, I understand that. We're just trying to get a feel for the practical implications here. I'm not sure anybody cited any case. I could be wrong about that. It's not as though we have a robust docket of such SEC cases here. Understood, Your Honor. I would say that as a practical matter, the reason for that is unlikely because most litigants choose to abide by the terms of the consent agreements that they enter into. Or the SEC doesn't pursue people who don't. Exactly, Your Honor. And again, the commission laid this out on page 57 of the excerpts of record, that it may decide in its discretion not to dedicate resources to reviving a long-settled case because, as I noted earlier, witnesses' memories do tend to fade over time. And the more time that passes, the harder it is for the commission to prove its case in court. Counsel, if one of the goals of the commission is to maintain public confidence in these enforcement proceedings, why can't we just have the commission require that the defendant admit the allegations in their consent judgment, but be able to say whatever they want? Sorry, I apologize. That's kind of what prosecutors do, right? When they allow somebody to enter a guilty plea, you know, they can do it in a low contendere. So why can't the commission do that? So I would say the commission determined in its discretion that requiring defendants to admit the allegations would likely make it substantially more difficult to settle cases, and it made a policy judgment that allowing defendants to state that they do not admit the commission's allegations so long as they also make clear that they're not denying the commission's allegations was the most efficient use of resources, given the importance of settlement agreements. But I would also say that because the petition before this Court is here on a challenge to the commission's decision not to engage in discretionary rulemaking, the standard of review is extremely limited and highly deferential. And as a result, as long as the policy is not contrary to law, which it isn't in our view, it should be upheld under that extremely limited and highly deferential standard of review that applies. One thing the petitioners raised is that maybe this is sort of similar to what Judge DeAlba is raising, is that this is not really a common practice among agencies to require this. So is there some reason that the SEC is differently situated that would justify this? So the commission articulated below two reasons as to why it was leaving the policy intact, and that's on pages 58 to 59 of the excerpts of record. First, the policy safeguards its ability to prove its case at trial by testing the veracity of an after-the-fact denial. And then second, as Judge DeAlba mentioned moments ago, the policy preserves public confidence in the factual predicates underlying commission enforcement actions. As far as other agency settlement practices, I believe that the CFTC has a similar policy, but I wouldn't want to speculate as to how other agencies settle cases. Here it's a challenge to the denial of rulemaking, as you say, almost like a per se challenge. If an individual has a concern about this agreement that he or she has entered into, they don't want to be out of the agreement, but they're concerned about its overhang on their speech, what is their ability, what is their remedy, how can they get clarity on that? Can they go to a court to try to do that? Because some courts have been reluctant on the 60B4 context. So what else can they do? So I think first and foremost, they could simply speak. And again, the reason for that is because the remedy afforded to the commission is quite limited. If the commission determined that a public denial had occurred, the most it could do is ask a court to restore the case back to the active docket. And then only if that request was granted could the commission then proceed to trial where the defendant would still have an opportunity to mount a vigorous defense. And I would note that this court made a similar observation in Leonard v. Clark, where it noted that the union remained free to endorse pieces of legislation, even if it risked having those endorsements be penalized under the terms of the collective bargaining agreement, because in the end that would be a rational judgment that the union made. Can somebody go to a court on a declaratory judgment type basis and say I want to publish this article, I just don't want to have this threat that somebody is going to say I'm in contempt of court, can I do this? Can I go back to the court that issued the judgment, for example? I do not believe that would be procedurally proper, Judge Bress. And I would note that in Novinger v. Novinger, one of the petitioners here attempted to obtain a declaratory judgment from the court, stating that his consent agreement was invalid, and the Fifth Circuit found that the procedural vehicle he chose was the wrong one. Right. I mean there he was trying to get it to be invalidated, but if someone would come in and say, listen, I understand what I agreed to, I just don't think that this article I want to publish is going to run afoul of that, and I'd just like somebody to confirm that before I'm told I'm in contempt of court. So again, I would say the terms of the consent agreement don't allow for any other mechanism other than the commission evaluating whether a statement violates the terms of the consent agreement, and then submitting a request to either a court or an administrative tribunal to restore the case back to the active docket. It's a little odd to have this as a rule, governing settlements, as opposed to a negotiated agreement. You've articulated a couple of reasons, but why is the public confidence enhanced by having a rule about this? I think the reason for that, Judge Thomas, stems directly from rumory, and specifically footnote three of that decision. So in rumory, what the Supreme Court held is that one of the benefits of plea bargaining is that the public is reassured that the prosecution's charges have a factual basis. That is precisely the rationale that the commission articulated here on pages 58 to 59 of the excerpts of record. Right, but in the context of plea bargaining, you don't have an absolute rule or statute that a no discussion provision or whatever is part of the plea agreement that's negotiated. Again, why is public confidence improved by a rule as opposed to just the act of negotiation? Again, aside from the footnote from rumory I cited moments ago, I would say as a practical matter, the reason the commission codified this practice as an informal rule was to allow defendants to modify their behavior accordingly and be prepared for settlement negotiations. Counsel, I'd like you to address what was said by Ms. Little. She talked about a case, about the article that she attached to her evidence or her briefs, about a case where someone took 12 years or 10 years or whatnot, a very long time and a lot of money. How does that help public confidence? If the reason they're settling isn't because you can show that you have a factual basis, but rather because they don't want to go through a 12-year truncated, very expensive litigation. I would say, again, defendants remain free to reject the commission's offers of settlement. They also remain free to speak, given how limited the commission's remedy is. I would also note that in a rumory, the Supreme Court specifically contemplated the possibility that defendants facing the prospect of signing release dismissal agreements would be intimidated by the risk expense publicity associated with a criminal trial. Yet, the Supreme Court held that this possibility did not justify invalidating all release dismissal agreements. The Supreme Court also held that a defendant's decision to settle in the face of those pressures is not the byproduct of an inherently coercive situation. In the SEC's opinion, let's say a company puts out an annual report that said, given the expense of litigation, we agreed to agree to a settlement, and we are prohibited from discussing it. That would be okay? That would not be a specific denial of the commission's allegations, I believe. I don't think that would be violating the terms of the consent agreement. But again, the commission lacks the ability to act unilaterally under the terms of the consent agreements, which I think is just such a crucial point in this case. If the commission believes that the terms of a consent agreement have been violated, it has to persuade a neutral decision maker that its view is correct. I want to briefly touch on the unconstitutional conditions doctrine that my opponent mentioned. As we explained in our brief, that doctrine is inopposite, because commission offers of settlement are not gratuitous governmental benefits. In contrast to, for example, falconry licenses or land use permits, which are quintessential examples of government benefits subject to the doctrine, commission offers of settlement are not gratuitous governmental benefits. As the commission explained on page 60 of the excerpts of record, the commission does not settle cases for the benefit of defendants. It instead settles cases to maximize limited resources, minimize litigation risk, and accelerate the resolution of the case. This is maybe just another way of restating the same question. If the commission required people to settle and said, you also may not give any political speech of any kind, we could call that an unconstitutional condition. We could call that a violation of remory. We could call it a lot of different things, but I think we'd all agree there's really no way the commission could do that. Does the unconstitutional conditions construct really help us here in any way, or does it just restate the same question? I would agree that it essentially restates the same question, especially because under the unconstitutional conditions doctrine, even if it applied, the no-deny policy would satisfy the close nexus requirement contemplated by remory. But again, as an initial matter, our view is the doctrine is inapplicable here because the commission explained below that commission offers of settlement are not gratuitous governmental benefits, and all the cases that petitioners invoke in relying on that doctrine involve quintessential examples of governmental benefits. The provision E speaks more tightly about denials. Some of the language in some of the agreements seems to expand on that with language like you can't directly or indirectly or create the impression or things like that. So is there a difference between what's actually put in the agreements and what's in the rule? I think your characterization is accurate, Judge Bress, in that the consent agreements simply expand on what's in the rule, but they're fully consistent with the rule. I want to also briefly touch on the voluntariness point, if I may. The consent agreements explicitly provide that defendants who settle with the commission do so voluntarily without inducements of any kind. An example of that language is on, for example, page 82 of the excerpts of record. And furthermore, as we note in our response brief, petitioners did not make this voluntariness argument in their opening brief. So in any event, that argument is forfeited, but it is also belied by the plain text of the consent agreements. Unless the court has any further questions, we would ask. Before you sit down, going back to some of that language in the agreements that's not actually in provision E, I think some of the arguments made is that that's vague and unclear. Is that a separate challenge? Is that essentially before us in this case when what we're being faced with is a challenge to the provision E? Yeah, I would say those challenges are outside the scope of this appeal, which is confined to petitioner's challenge to the no-deny policy and the provision stemming from that policy, as opposed to other discrete provisions in the consent agreements. And what's your response to the other side's view that some of the language, particularly in the stock agreements, would create greater lack of notice maybe than even the provision itself because of some of this more open-ended, open-textured terms, like indirectly? So my response would essentially be the same, which is, one, defendants are free to reject the commission's offers of settlement, and two, the limited remedy afforded to the commission means that if the petitioners wanted to publicly deny the commission's allegations, they could do that, and then the remedy afforded to the commission would be quite limited. At most, the commission could ask a court to restore the case back to the active docket, and then if and only if that request was granted, it would have the chance to prove its case at trial. Okay, I think we've exhausted our questions. I want to thank you very much for your presentation. I have a long list of short statements I'd like to make in response to opposing counsel's argument. First of all, we do make the voluntariness argument. It's made in the petition below. It's made in our brief. It's expanded upon in our reply brief, and so that is simply not correct. I also did not have time to get to the standard of review, and I just want to point out that normally these kinds of cases go through an arbitrary and capricious analysis under 706A, and we can succeed on that because this is otherwise not according to law under that provision, but I also want to point out that 706B and C, B says if a rule is against constitutional right, the standard of review for this court is exacting scrutiny, as is the standard of review for the court under 706C, which has to do if the commission has gone beyond its statutory authority, and as I mentioned earlier, a gag is not amongst the penalties that the SEC can apply to anyone. My friend representing the SEC also made the statement that the parties to these agreements are in their respective pre-settlement postures. Well, that's not true. Our clients, whether they be individuals, they had untrammeled First Amendment rights before they entered into this agreement. Those are severely taken away from them by the government, and that is not permitted under law, and so they are not in the same position after the agreement as they were beforehand. What he was saying was that if you went to court and if there was a challenge to someone's violation of this, the remedy would be that it would take people back to time zero, which would be just that the case had been filed and the parties can go forth and litigate. That's how I understood that position. Well, I hear you, but I think it doesn't because they are back in court, and their speech put them back in court, and that is a prior restraint as recognized by two judges on the Fifth Circuit and several district court judges in the Southern District of New York who are very concerned about this prior restraint aspect. So they may be back in court at great cost, expense, and personal time, and even their ability to carry on their lives. It also contains compelled speech that they are supposed to say, oh, but I didn't deny it. That's even worse than the compelled speech that was held unconstitutional in Janus and in Becerra because it makes you self-incriminate and say, but I didn't deny what the SEC said. As I say, the voluntariness is throughout our briefing and our presentation both to the commission below in the petition as amended and before this court. You had asked about an example, well, couldn't they maybe go to court and say, can I say X, Y, or Z? The First Amendment is not constructed to force people to go to court and say, mother, may I speak this way. That is a burden that should not be put on anyone. But do you think the remedy of declaratory judgment is available to people who enter into consent agreements with the SEC? I know it's not. As my friend on the other side said, we tried that in the Fifth Circuit and before Judge O'Connor below and were summarily told . . . Weren't you trying to have the agreement be invalidated altogether? I think there's a difference between . . . What I was asking about was not wanting to keep the agreement in place but wanting some clarity on the scope of it as it relates to some speech. I hear you on we don't usually go to get permission on that. That's true, except here we have an agreement. There's some question as to whether that has a role to play. I'm not sure courts should really be in the business of pre-clearing speech, but here what we're seeking is vacatur of the Commission's refusal to amend its rule. I understand that. We're just trying to get the scope of available remedies in your view. The SEC says no, you can't seek a declaratory judgment as to specific speech and whether it violates a consent agreement. What's your position on that? I know you think it's not relevant. No, it's not relevant. I just don't think anybody should have to ever be put to the test. I understand that, but do you think it's available? I'm not sure. I'm not sure. A person would have to come and say, I want to say X, Y, and Z, is it okay? The SEC could either agree or disagree, and then you have to go through a whole appellate process if the court agreed with the SEC. I don't think that's how future speech of people charged by the government needs or even constitutionally should be regulated. Do you have a sense of how often the SEC is moving to reopen cases on this basis? We do, and helpfully one of our amicus briefs provided the court with that information. This is the amicus brief by the Americans for Prosperity Foundation, and in there they talk about a case of Michelangelo's where they forced him to withdraw a statement he made and basically correct himself and say I was wrong to have spoken in contrary to my gag. They also weaponized the gag clause in a public dispute with Morgan Stanley in 2003. Morgan Stanley held a press conference. It said pretty much what— I saw there were some indications, but how about year over year? Do you have any sense of the numbers? No, I don't, but I will say I think the idea that the longer you wait, the less likely the SEC is going to come in, that's not how we handle free speech, that you have sort of this absolute prohibition as a condition of government that you not criticize it, and then when it gets old and stale enough, maybe you can then speak. That's just not how the First Amendment operates. We've taken you a little over, so I see we may have exhausted our questions. Why don't you wrap up? I will. I wanted to just mention that Mr. Romer was denied relief under Rule 60, and that is a very distinctive qualification of that ruling, and in fact that it should not be understood to hold any more than that. But this also goes to the remedy issue. The Cato opinion in that dispute, the SEC came into court and made exactly the same argument that all we have to do is move to reopen and maybe the court will, and the Cato court said no, this is civil and criminal contempt. So how do I advise my clients who desperately want to speak or my media clients who want to speak to them to say, oh, go ahead and talk when the D.C. Circuit has said no, you are subject to civil or criminal contempt, and that's an important holding that this court needs to understand. I also think the compelled speech aspect that you have to also say, but I don't deny the positions set forth in the complaint against me, is constitutionally prohibited. And finally, on the issue of public confidence in the agency, which is one of the rationales given by the SEC, that is a post hoc rationalization, but the best rebuttal of that is in Commissioner Peirce's dissent from the order that is under review by this court. Public confidence is in fact impaired when the commission is hiding its cases, 98% of what goes on in their cases, from any kind of public understanding or knowledge. And I think Justice Gorsuch explained this very well in a case called Axon when he said, aware that most people cannot outlast or outspend the agency, agencies very often use their leverage and their superior power to secure agreements that they could not achieve. I think we have your argument. I want to thank you, Ms. Little. Thank you, Your Honor. I want to thank Mr. Ramkumar for his argument, and this case is submitted.
judges: THOMAS, BRESS, ALBA